Your Honour, this case on document 2-14-1054, People of the City of Illinois, Plaintiff's Affiliate, v. Victor A. Picaso, defendant's account, arguing on behalf of the defendant's family, Mr. Christopher McCoy, arguing on behalf of the Plaintiff's Affiliate, Mrs. Joanne M. Fairfield. Good morning, Counsel, Mr. McCoy. May it please the Court. Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Hector Picaso. This case involves three issues. First, whether the state proved force beyond a reasonable doubt. Second, whether the prosecutor made improper statements during closing argument. And lastly, whether defense counsel is ineffective for not requesting the pattern jury of instruction defining force. And the common thread between all three of these arguments is the element of force. And force, there's no set standard for it. It's a case-by-case determination, but there are some basic guidelines. First, the lack of subjective consent in and of itself does not constitute force. And second, the force requires more than the force that's just inherent in the sexual act itself. So applying these… What do you mean by that? Well, that comes from the case of People v. Denbo. And what they say in that case is simply that… Does it have to be physical? No, it does not have to be physical force. But just the act itself is not, the sexual act itself is not enough to prove force. I'm sorry. Can it be manifested in some other way? For example, the assertion of authority over an individual? Well, it does not have to be physical force. I agree with that. The assertion of authority, obviously, Mr. Picasso was not charged with, based on being in a position of supervision or authority over the victim. Although the State argued that in their closing, did they not? Yes, and that is one of the arguments we're making for why that was improper, that they were confusing the force element, which was what Mr. Picasso was charged with, and another separate statute that he was not charged with. Well, weren't they also basically arguing what the defense brought out in the testimony of Mr. Picasso when he testified that he was trained on dealing with mentally handicapped people, that he was trained on abuse, neglect, etc.? So he was trained to be around people like the victim who were mentally deficient. So that came out in the defendant's own testimony. So how is that not relevant to the facts and circumstances of each encounter when the defendant himself testifies that he was trained on how to deal with people in those settings? In terms of the argument the State made or in terms of what force? In terms of the testimony and the argument. The State made the argument that essentially throughout the trial that her mental impairment or the fact that she was Down syndrome, suffered from Down syndrome, was a relevant fact on the issue of force. Yes. Do you agree that it is a relevant fact? It could be relevant in some circumstances. Here there's... Go ahead. Well, I guess the counterexample is here. It's not because there's no testimony in terms of how her condition prevented her from either resisting the acts that occurred or in terms of understanding the acts that occurred. She testified that she was afraid. She did testify that she was afraid. She didn't resist because she was afraid. She did testify she was afraid. However, there was no threats from Mr. Picasso. He never once hit her. He never was violent towards her. Whatever her fear was, it certainly didn't come from anything from the defendant. Is force subjective or subjective? Well, the... I mean, I think it really is both. And here neither one is presented. I mean, it's not... But did the... You know, back to Justice Burkett's question about her mental retardation or her Down syndrome, didn't the jurors have an opportunity to observe her in testifying and determine whether she had the ability to understand the seriousness or the ability to ward this man off or anything like that? I mean, aren't you asking us to usurp the knowledge of the jury who had the opportunity to observe her, and we do not? What do you say about that? Well, that's the same exact argument the State made in Pula, Massaca, and this Court reversed the convictions there. Well, Pula, Massaca was different because in Pula, Massaca, the defendant's first and only encounter with the victim was the night of the act, when they met each other in a restaurant. She, the victim, according to the testimony, according to her own examination, said that she admitted that she is the one who placed his hand on her thigh under the table, so she made the first sexual overture, which led to an encounter in the car. He didn't know anything about her deficiency. There were photographs of her. She was an adult woman who had been employed, was married. This is far different from this circumstance where the victim is living in a facility for people who suffer from mental retardation in order to get them to a point where they can be independent, and she had just arrived shortly before the alleged acts, correct? Yes. So this case is completely different, isn't it? Every fact that's correct about the facts, and I'm not saying that these are totally factually on all fours with each other, but responding to Justice Shostak's question, that was the argument the state made in Empul, Massaka, that the jury saw the victim, the jury could tell if she was confused, and as this court said in that case, that the state in Empul, Massaka, the state did not try to cure up any of the confusion on redirect, and the same thing happens here. On cross-examination, SD testifies that she could have ran away in all of these instances, and none of them was the defendant preventing her from leaving. In fact, she said that the defendant only used force in one of the six counts, and on redirect examination, the state never counters any of that evidence that comes out. They charged him with force. They could have charged him with inability to give consent, right? They possibly could have. They didn't. Or he being in a position of authority. Yeah. There's also another. This wasn't raised in the briefs, but there also is another statute that may have applied in this case. Let me find the citation. It's 720 ILCS 5-11-9.5, and that's sexual misconduct with a person with a disability, and that would, on the face of the statute, seem to apply to these facts, but that's not what the state charged. They charged force. That was the one theory they presented at trial, and instead of proving force, the state tried to compensate for the weaknesses in the case by making the case about sympathy for the victim, by making the case about inability to consent, which was never charged, and by making this emotional appeal to the jury very similar to how the prosecutor in Empul, Massaca, which is another case from the Lake County State's Attorney's Office, argued the case. You're saying then they were not just commenting on the evidence when they were making these arguments because that's what their contention is. Absolutely. This went far beyond commenting on the evidence. The prosecutor said he was specifically equating force with the lack of subjective consent, which, as this Court held in Empul, Massaca, is simply not correct. The state also was confusing force with inability to consent and with being in a position of trust and authority over the victim. Are these two cases, this case and Empul, Massaca, an example of there's a gray area in the law that should be addressed by the General Assembly and not here in the courtrooms? Yes. Certainly, the legislature is free to do that. I think the statute, the sexual misconducts with a person with a disability, kind of fills in some of that gray area. But really, it's just, I mean, if there's any fault here, it seems to be with the state for charging the wrong theory of the case and charging a theory of the case that the evidence just didn't show here. Now, you basically acknowledged it. I don't know if you acknowledged it. I don't want to put the sign on it. But basically acknowledged that there was one incident or two where she talked about force, I think it was in the bathroom, and you were saying in your briefs, even if they prove force, there's error because in effective assistance he didn't introduce the IPI, what is it, 11.65C, concerning force. Let's talk about the lack of presentation of that IPI. Correct. And that kind of dovetails into the prosecutorial misconduct argument because once the state repeatedly told the jury the wrong definition of force, defense counsel should have requested this instruction defining force. And normally the decision what jury instructions to offer is a matter of trial strategy. But we have a somewhat unique case here in that defense counsel's own motion for new trial shows this wasn't a strategic decision. He thought this instruction should be given. He just never offered it. So this seems to be more of a product of oversight or perhaps some type of mistake than trial strategy which this court needs to give deference to. We know that because it was put in the post-trial motion. Is that correct? Correct. And that's the argument defense counsel makes. And the judge and the state say, well, this is waived. Defense counsel never offered it, which defense counsel acknowledges at the post-trial hearing. And because this instruction is never given, the jury never is given a definition of force. So they're left with the impression given from the state's incorrect closing argument that force is something about a lack of subjective consent, that force is inability to consent, that force is a position of power and authority over someone. And again, had this instruction been given, it would have redirected the jury and focused back on the real key component of this case, which is the element of force. The jurors also asked a question at some point during the deliberation. They asked for the definition of reasonable doubt from the judge, which shows that despite all these improper arguments and despite not receiving the instruction, they still had a question about whether the state met its burden of proof. So clearly that shows that this was not an overwhelming case. Again, our position is these convictions should be reversed. But even if they're not, it's still a very close case for the prosecution, and the jury note really speaks to that as well. Now, force, per the definition of the jury instruction, can also include physical confinement. And there was one incident in the bathroom which amounted to physical confinement. Isn't that correct? Well, what the jury instruction says and what the statutory definition of force says is that force can occur when the accused overcomes the victim by use of physical confinement. So this incident in the bathroom, there was just, yes, they were in the bathroom together. The door was shut. But there was no evidence that Mr. Picasso used physical confinement to overcome the victim. There was no evidence he was blocking the door, that he was preventing her from leaving. And as the record shows, he's a very – Well, I mean, you walk into a bathroom, it's a small space. I mean, if she walked in first, which is, I believe, what the record shows, and he walked in afterwards or after her, I mean, it doesn't seem like there would be much room to maneuver and leave. So, I mean, that really does amount to physical confinement, I would think. Well, she testifies, though, that nothing prevented her from leaving in this incident. Well, she said he locked the door. Correct. He locked the door and that he did push her up against, I think, the mirror. Jacked her. Jacked her up against the mirror. So, you know, that testimony, together with the fact that, oddly enough, your client admits being in the bathroom with her, and he also admits being in the bedroom with her, but says she's a liar when she says he initiated these sexual encounters with her. But he doesn't acknowledge that. And to Justice Senoff's point, isn't that enough evidence for a jury to determine if they believe it, that that is confinement? Well, a few things. First of all, she's mentally retarded, and that's certainly relevant to what she would be thinking under those circumstances. Would you agree? Not in this case. With regard to confinement and not understanding the ability to flee or get out? No, because there's no evidence of it. This is the state's burden to put forth. There's evidence that she was mentally retarded, correct. There's no evidence, however, regarding how that would affect her processing of this situation or how that would prevent her from leaving. You know, there are certain things that common sense dictates. Common sense tells an adult male who's been instructed on how to handle encounters with mentally retarded adults that you should know better than to lock a door behind you when you're alone with a person suffering from Down syndrome. You don't need instruction on that. That's common sense. Isn't that common? Is the jury supposed to lock out their common sense when they go in a jury room? Absolutely not. The question here is not, was this a smart thing to do? Was this a prudent course of action from the defendant? The question is, did the state prove forced? And with regard to your earlier question, yes, the door was locked, but it could be opened from the inside simply by turning the handle. So that didn't prevent her from leaving. I take your better argument is that that IPI instruction on force wasn't given in that situation. I think this is one of the closer cases in terms of force. I still do not believe force was proven beyond a reasonable doubt. And in terms of being jacked up against a wall, that was only regarding count six, which was the second of the two counts that occurred in the bathroom. Estee was very specific that count one, she was not up against a wall when that occurred. Unless there are any further questions. We don't have time on rebuttal. Thank you. Thank you. Ms. Ripley. Counsel, should a victim's disability factor into the force analysis? Good morning, Your Honors. And yes, it should. In this case, the defendant seems to be wanting to divorce the victim's mental illness, her Down syndrome, and we cannot divorce that from this case. But couldn't you charge that? It is possible, Your Honor, but it is up to the prosecutor's discretion of how they charge a case. And in this situation, there was sufficient evidence to prove force, which is what the people are stating in their brief. Now, the defendant comes up and makes it seem as if there is no documentation or no testimony from the victim. However, that is not the case. In each incident, she has described that there is, in the first one, that he grabbed her hand. He forced me to touch him. He whispered, do not to say anything. Now, that was for one count. The second count, he then moved his hand, grabbed, he put his hand onto her vagina, started rubbing, saying again. But now, wait a minute. Taking a hand and putting it someplace is the act itself. So how is force not inherent in the act itself, is it? No, Your Honor. And the people are not trying to make that assertion. However, again, because of this woman's Down syndrome, she has stated multiple times throughout this record that she was in fear of this man, in fear that she was going to be. Yeah, but you're, again, they weren't charged that she was pretending to be disabled. Correct. You couldn't charge that. Yes, Your Honor. However, when looking at the fact that she was fearful, she is describing the fact that he is touching her, that he is grabbing her, that he is making a command to her in the position that he is as her supervisor, do not say anything. She did say that in the first incident there was force. She did say in the first incident that there was force to her. Now, with regards to the second incident, the same thing happened. He pulled down her pants. He forced down her. No, she didn't. I don't believe the record shows that she testified that he pulled down her pants. No. She testified that he put his hand in her pants, correct? Yes, Your Honor. I misspoke. I actually got confused with the multiple incidences here. I understand there's six of, well, six counts, four different incidents. Yes, Your Honor. And in the second incident, he put his hand into her pants, into her pants, touched her vagina and saw blood and then pulled it out. When she was vacuuming. Yes, Your Honor. So where is the force? It is the people's position that the force is the fact that he thrusted his hands into her pants. Now, yes, there is this case that you cannot, it has to be more than just the act of sexual encounter, but we are taking into consideration her mental illness, the fact that she may not understand things. What evidence, counsel, was there in the record of that? The evidence that she does have Down syndrome. But was there anything specific other than that, that was introduced about the nature of her Down syndrome specifics? No, Your Honor, but we do know that she is attending Lamb's Farm, which is a place for people with disabilities to learn how to become independent. She's been waiting to be here for 20 years. She's 37 years old. It isn't much of an inference that when this happened to her, it could be considered force for her. Now, when it comes to criminal sexual assault and criminal sexual assault. What authority do you have to support that statement, counsel? What case law authority? There is no authority here, Your Honor. It's just an inference that's being made with regards to the victim's Down syndrome and to this case. It is a difficult case because what she did testify to direct were most of the incidences very much direct grabbing or force or some sort of pulling or even in confinement. However, she did contradict that on cross-examination because she said that there was no force, there was no threat, and that is the confusing part here. Because on direct, she very much testified to incidences of force and even very much expressed how fearful she was of this defendant, fearful of leaving. And every incident, even describing how she didn't feel that she could run away because she was fearful of him. But she did run away. She did on several occasions, did she not? She left his presence. On the first incident, she did walk away. The other, for the four incidences where the six charges are from, there were no other incidents where she walked away. There are two other incidences where she did run away that were separate to what is being charged here, Your Honors. This would be a much easier case, and I hate to keep going back on it, but it would be a much easier case if it were charged correctly, wouldn't it have been? It wouldn't possibly have been easier, Your Honors, but it is up to the prosecutor's discretion to charge. And in this case, they felt that they had the evidence, and it is the people's position that there is evidence here that there was force by use of force. The defendant did criminal sexual assault and criminal sexual abuse to the victim. Let's talk about the evidence that they have. Besides putting on the witness the closing arguments, the closing arguments are not evidence, but it seems to me from reading this that the prosecutor thought that he was putting evidence in, in closing argument and evidence that really wasn't relevant. What is your response to the closing argument in this case and the inflammatory nature of the closing? Well, first, the people would like to show that this case is very much distinguished from Oppola-Masaka, which the defendant seems to be relying on and trying to make some sort of threat or connection that Lake County is trying to do some sort of misconduct. That is not the case here, Your Honors. As stated earlier, the victim kind of contradicted herself with what she said in direct and what she said in cross-examination. And it is the people's position that some of those comments made in the closing arguments were to try to correct that incident or try to correct that mistake. First, when the defendant says that there was a redefining of force, prior to those statements, and again, looking at closing arguments as a whole, as the entire context, he was describing the first and second incident and helping to clarify how even though the victim stated that there was no threat, there was no force, she did describe her fear of this, she did describe how these things happened to her. But fear, again, is not force, is it? I mean, that's not within the definition of force. No, Your Honors. Perhaps the prosecution would have had a better case if they had called an expert to have an expert testify how an adult with Down syndrome might react to certain circumstances. And that would have enhanced your argument. But there's no evidence as to how she is going to react to certain circumstances. Correct, Your Honor. And there's no evidence other than his own self-serving testimony when he testified that he was trained on abuse, et cetera. But the prosecution didn't offer any evidence. And then the prosecutor gets up and says, X, Y, Z, that's force, rather than referring to the law or to the instructions or saying the judge is going to instruct you. The prosecutor is just saying, this is force, this is force, this is force. Isn't that error? No, Your Honor. And as you were stating earlier with regards to this idea that an expert should have came in to kind of define what her handicap or her abilities are, Your Honor, as you stated earlier, it's common sense with regards to Down syndrome. This is not, say, pulling a sock in words of learning disability and trying to understand what she can and cannot understand. This is a chromosome genetic disease. This affects her in every way and every capacity. As you were stating earlier, Justice Shasta, that the jury was able to observe her demeanor, able to observe her testimony, how she reacted to state's attorneys, how she reacted to the defense counsel. And she was able to conduct herself and testify without any difficulty, respond to cross-examination, had no trouble understanding the questions, no trouble whatsoever. Is that correct? Correct, Your Honor. And it was not the prosecution's argument at all in this case that she was confused or misunderstanding or didn't do anything in their closing argument, but what was as different than pulling a sock or pulling a sock in the prosecution did do that. However, Your Honor, she did contradict herself. She did state that there was no force or there was only force in one incident and, no, he didn't threaten me. So it was the prosecution's job to use the inferences and things that were on the record to try to explain to this jury that, yes, you heard this contradicting testimony, but the one thing that you did hear throughout was that she was scared, that this happened to her in every incident. She felt that she couldn't run away or she couldn't say anything, and thus this shows that there was something that happened here. Your Honor, that never was in question, really, was it, to mean that the acts happened? The whole issue was, again, as we were talking about at the beginning, was whether or not force was proven. Well, actually, Your Honor, if the acts did happen was a question here because defense's entire theory of this case is this never happened, that I did not do this, that she's a liar, that she was touching herself, that I had to stop her. But even if, okay, let's go back to there was a bit of a concession. Say, by defense, that, okay, in the bathroom, perhaps, there was force. Is the fact that either the state, because I would think if you're a prosecutor and one of the elements of your case is force, that you would have a definition of force ready in an IPI when it came time for the jury instructions. That didn't happen, so the state didn't give the IPI force, defense didn't give the IPI force. Is that ineffective assistance of counsel not to give that IPI? No, Your Honors, because the IPI force is not required in this case. And as stated earlier, it's common sense, the jury does not leave their common sense at the door once they enter into a courtroom. Force, there is no standard that it is applied. But when they hear counsel in closing argument that force is the equivalent of consent or lack of consent, that force is the equivalent of the simple act or acts that are inherent in committing the offense, isn't that misleading to the jury? And then wouldn't that dictate the need in that circumstance for the instruction to be given? Well, no, Your Honor, depending on how we are viewing this, either under plain error review or ineffective assistance of counsel. Now, under plain error review, it is up to the defense to show that there was some substantial prejudice to him with regards to these comments, either because the evidence was so closely balanced and this tipped the scales or this was just causing him to not have it affecting the justice system. Now, in this case, Your Honors, the evidence was not so closely balanced because there was descriptions of force. So it is the people's position that even though this court does find that those comments were error, they did not substantially prejudice this case because there was substantial evidence to prove that there was force here. Now, with regards to the jury instructions, again, it's not required. It is up to the defense or the prosecution to include it. Now, the defense did not include it at trial, and in hindsight, yes, said that maybe I should have done this, maybe it was a mistake. But again, his entire theory was I didn't do this. The defendant did not participate in this. The defendant had nothing to do with this. So he was relying on the jury with their common sense to understand what force is. How should force be applied? There was no need for a jury instruction because hopefully common sense would have, I guess, assisted him or assisted the defendant because he didn't apply any force. He didn't do anything. That's what his theory was. So it is not ineffective assistance of counsel, Your Honors, because I believe that it was trial strategy at the time. Now, in hindsight, the defense counsel can say he should have included it, but at the time his theory was that this didn't happen at all. In the defendant's brief, he mentions the defendant's small stature, and in your brief you say there was no evidence of his small stature. Do you want to comment on that? Well, it was the people's position that there is no case law or authority saying that a small stature does not provide any sort of substantial force or size or, I'm sorry, his size does not provide any fear or sort of power over the victim just because he has a small stature or a small size. Your Honors, we have no idea how strong he is or what he can do, what he can't do. We have no idea what the victim is, how slight she is, how forceful she is, if she could succumb to someone of that size. Additionally, as a person in authority, as a person who is her supervisor, who tells her to do things. Was that charged? Was he charged as a person in authority or supervisor? No, Your Honors. But the facts in the record do indicate that he was a person of authority over this victim because he was a supervisor of this cleaning crew. It was his job to observe her, to make sure that she was safe. So the fact that he's a supervisor, does that equate to force? No, Your Honors. It helps or it assists with the idea that why she was so fearful possibly of this man. Right, fear and force is an equal force. No, Your Honors. But it also, his authority allowed him to take advantage of this particular victim. You're absolutely right. Then he should have been charged that way, right? It is the prosecution's discretion on how they charge, Your Honors. And on an appellate level, I cannot state what it is, but the state's attorney should or should not have charged him as. But the record does indicate that there was by use of force here in four different incidences. And furthermore, I did want to make one more comment. Physical confinement is not just to the bathroom. In the fourth incident, even though the victim does not fully articulate how the threat of events, she does describe how she put her arm up in her bedroom, how he was not allowed to enter her bedroom because of who he was. Then he pushed past her. Well, he went around her. Wasn't that what the record shows? Actually, Your Honors, she states that he pushed past me. Now, when asked on cross-examination, did he touch you, she said no. So, again, there is contradicting testimony. But she did say that he pushed past her, that she did put her arm up to stop him, that he was not allowed to come into that room, and he did come into the room. So he didn't honor her wishes. Is that correct? Correct, Your Honor. And the jury had the opportunity to observe him and his size and observe her and her size. We might, obviously, have not had that opportunity, but the jury could see that. Correct, Your Honors. The jury observed both of the victim and the defendant's testimony and made their own credibility determination. Again, we cannot divorce her Down syndrome from who she is. So when that was presented in front of the jury, they heard her contradictory testimony and they heard the defendant's theory and they made a decision that, yes, the defendant was guilty of criminal sexual assault and criminal sexual abuse. Now, I know that earlier you said there was a question about the jury asking when they made the question of reasonable doubt, did that state that this was a closely balanced test or closely balanced with regards to force. However, they asked for reasonable doubt. They could have easily asked for the definition of force and they didn't. I see that my time is up, Your Honor. I see if I finish my answer to my question or my statement. They could have easily asked for the definition of force and they did not do so. So it is why that is the people's position that the common sense of what force is, that is why the definition did not need to be included because they understood and they made their own determination. And for those reasons, we respectfully ask this court to affirm. Thank you. Thank you very much. Thank you, Your Honors. Mr. McCoy. Thank you. This court in Empul, Massachusetts said that the victim's learning disability is not a substitute for proving force. And that same thing applies here. The state, both at trial and here in appeal, continues to pursue and focus on the victim's mental illness. However, that is not the element that was charged here. And we don't know exactly how Estee's Down syndrome affected her in this case. Down syndrome could be mild, could be severe. There's nothing regarding exactly what her diagnosis was or how it would affect her behavior. And touching on the incident in the bedroom, that counsel is correct that on direct examination, Estee testified that Mr. Picasso pushed past her to get into the bedroom. However, on cross, she says, he never made any physical contact with me. Then on redirect, the state doesn't try to rebut this, doesn't try to explain this contradiction. They just leave it up in the air. But even if Mr. Picasso had brushed past her as he was entering the room, there's no testimony of how Estee went from standing by the door to laying on her bed. There's just a void of evidence regarding this incident and really a void of anything that could show proof. Turning briefly to the... During pretrial proceedings, there was a GAL appointed for Estee, correct? Correct. And was the GAL present during her testimony? I'm not sure on that. I didn't notice that in the record. I don't believe that the record indicates that the GAL was there because that was litigated a significant time before trial. But to comment on the closing argument, the state was indeed putting new evidence in during its closing argument, specifically the fact that Estee did not have the capacity to lie, which as the state acknowledges in its brief, there was no evidentiary foundation for that. And this was problematic because it insinuated that the prosecutor knew something about Estee and about her condition that the jury didn't know. And so instead of actually presenting evidence on it, the state just makes this argument without an evidentiary foundation. Was that objected to at that point? To that argument? Yeah, when he said she's incapable of lying. I don't believe that was objected to. Finally, with regard to the IPI, this IPI is not required, but there's also nothing preventing either the defense or the state from bringing this on. This is not like knowledge where the committee comments seem to limit that instruction to cases where the jury asks for it. There's nothing that requires the jury to ask for this instruction and defining force before it is actually given, unless there are any further questions. In conclusion, this was a highly charged emotional case, but it was also a very weak case for the state. So instead of proving force, the state made this emotional appeal to the jury, and unfortunately, it seems to have worked. However, when you look at the actual evidence and actually what was required, force was not proven beyond reasonable doubt. And for this reason, Mr. Picasso respectfully asks that this Court reverse its convictions or alternatively remand this case for new trial. Thank you very much, counsel. The Court will take the matter under advisement and render a decision in due course.  Thank you.